CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-436-7241
    FAX: (415) 436-7234
    Michael.Lagrama@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-CR-00228-EMC |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| MARCO MARTINEZ, | |
| Defendant. | |

## I.    INTRODUCTION

As charged in the two-count Indictment, defendant Marco Martinez pled guilty to Felon in Possession of Ammunition (Count One) and Felon in Possession of a Firearm (Count Two), both in violation of 18 U.S.C. § 922(g)(1). For the reasons stated herein, the United States respectfully recommends that Martinez be sentenced to 18 months following by 3 years on supervised release. This sentence is sufficient but not greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a). Notably, with respect to Count One, it appears that Martinez was shot five times in an unprovoked attack, while the shooter shot and killed Martinez's friend. The shooter was later convicted of first-degree murder. It also appears that Martinez has been in continuous custody since April 2022 (more than 3 years and 5 months) and intends to refrain from possessing firearms in the future and

instead focus on leading a law-abiding and productive life.  Further, the government recommends that the 18-month sentence be concurrent to the undischarged portion of the 5-year sentence imposed on Martinez by the San Francisco County Superior Court in Case No. CRI-24004329.  And the government requests that Martinez be ordered to forfeit all firearms, magazine, and/or ammunition seized from him in connection with this case.

Finally, notwithstanding Probation's Sentencing Guidelines calculation, the government stands by its Sentencing Guidelines calculation as set forth in the parties' plea agreement, which was based on the state of the evidence at the time.

## II.     BACKGROUND

### A.  Circumstances of the Offenses

On March 29, 2021, at around 9:00 p.m., Martinez was shot in an incident that occurred at the BART Plaza at 24th Street and Mission Street in San Francisco, California.  Dkt. 19 (Plea Agreement) at 2.  Martinez's friend was killed, and Martinez suffered five gunshot wounds and was hospitalized.  *See id*.  The shooter was later convicted of first-degree murder.  *Id*.  During this incident, Martinez possessed a black, semi-automatic, privately-made firearm (*i.e.*, a ghost gun).  *Id*.  Martinez also possessed a magazine loaded with a Sig Sauer brand 9mm luger bullet.  *Id*.

Separately, on April 27, 2022, at approximately 1:20 p.m., San Francisco Police Department (SFPD) officers went to Martinez's residence in San Francisco, California, to execute a warrant for his arrest.  Dkt. 19 at 2.  During the arrest warrant execution at his residence, SFPD officers found a loaded firearm in plain view.  *Id*.  The firearm was a black colored Smith & Wesson Springfield 9MM handgun.  *Id*.

### B.  Procedural History

On October 4, 2021, the government filed a Criminal Complaint against Martinez charging him with one count of Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). Dkt. 1.

On July 25, 2023, the government filed a two-count Indictment against Martinez charging him with one count of Felon in Possession of Ammunition (Count One) and one count Felon in Possession of a Firearm (Count Two), both in violation of 18 U.S.C. § 922(g)(1).  Dkt. 1.  The Indictment also contained a Forfeiture Allegation under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).  *Id*.

On August 21, 2025, pursuant to a plea agreement, Martinez pled guilty to Counts One and Two of the Indictment. Dkt. 19.

### C. Sentencing Guidelines Calculation

In accordance with the parties' plea agreement, the United States recommends that the Court adopt the following advisory Guidelines calculation:

    a.    Base Offense Level, U.S.S.G. §2K2.1(a)(6)(A)      14

    b.    Acceptance of Responsibility, U.S.S.G. §§ 3E1.1(a), (b)      -2

    c.    Final adjusted offense level      12

Based on the parties' plea agreement and Martinez's criminal history points (Criminal History Category V), the parties recommend that Martinez is subject to a Sentencing Guidelines range of 27 to 33 months. Dkt. 19 at 5. The government also disagrees with Probation's Sentencing Guidelines calculation. Cite. The government specifically maintains that the base offense level should be 14 under U.S.S.G. §2K2.1(a)(6)(A) (defendant was a prohibited person at time of offense), rather than 20 under §2K2.1(a)(4)(B) (the offense involved a semiautomatic firearm capable of accepting a large capacity magazine). At the time of the plea agreement, the government did not have sufficient information regarding whether the magazine in relation to Count One was a large capacity magazine. Presentence Investigation Report (PSR) at 22. Thus, based on the state of the evidence at that time, the parties did not agree to a large-capacity magazine base offense level in the plea agreement, and the government stands by the Sentencing Guidelines calculation as set forth in that plea agreement, which was entered into in good faith. *See United States v. Alcala-Sanchez*, 666 F.3d 571, 573, 575-76 (9th Cir. 2012) (the government breached its plea agreement by reneging on the base offense level set forth in the parties' plea agreement and recommending a higher base offense level based on Probation's Sentencing Guidelines calculation).

### III. DISCUSSION

### A. Legal Standards

The Court should impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate

deterrence; to protect the public; and to provide Ponce with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors as applicable to the case, among others:

(1) The nature and circumstances of the offenses and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.    Sentencing Recommendation by the United States**

The United States recommends that the Court impose on Martinez a sentence of 18 months followed by 3 years on supervised release and order him to forfeit all firearms, magazines, and/or ammunition seized from him in this case.

**1.    Nature and circumstances of Martinez's offenses and his history and characteristics**

Based on the particular facts in this case, a sentence of 18 months is appropriate. To be sure, given Martinez's serious criminal history, he should not possess a firearm or ammunition. PSR at 8-13. As an adult, Martinez was convicted of robbery (in 2020), first-degree burglary (in 2024), and carjacking (in 2025). PSR at 9-10. For these offenses, Martinez was sentenced to 3 years, 2 years, and 5 years in prison, respectively. *Id*.

During his robbery offense, in particular, Martinez brandished a firearm and pointed it at the victim's head. PSR at 9. Aside from his criminal convictions, Martinez has also been arrested several

times. *Id*. at 10-13. His 2020 arrest for attempted murder and assault with a firearm is particularly concerning. *Id*. at 11. In that incident, a group of individuals, including Martinez, were driving in a black car and fired shots at an occupied car while both cars were driving in the Mission District. *Id*. at 12. When SFPD officers arrived on the scene, they noticed that both vehicles were damaged by gunfire, and a bystander was shot in the lower right portion of his back. *Id*. The officers also found several semi-automatic firearms, several magazines, dozens of fired cartridges, and several unspent cartridges. *Id*. The officers noted that Martinez was a known Norteño gang member. *Id*. But no charges were filed against Martinez. *Id*. Thus, Martinez's criminal record involving violence and apparent gang activity underscore why he should not take possession of any firearm, which could be used to commit further crimes and acts of violence.

Nevertheless, there are mitigating factors in this case. Regarding the incident on March 29, 2021 (Count One), it appears that he was not the aggressor. PSR 5. Martinez claims that he and his friend were simply standing at bus stop and smoking marijuana in the Mission District when someone started firing shots at them. *Id*. Martinez's friend was killed while Martinez was shot five times (three times in the right shoulder and twice in his lower abdomen) and was hospitalized. *Id*. at 4-5. As a result, Martinez presently suffers from nerve damage from his gunshot wounds and takes pain medication. *Id*. at 14. The shooter was later convicted of first-degree murder. Dkt. 19 at 2. That Martinez and his friend may have been shot in an unprovoked manner gives some credence to Martinez's claim that possessed a firearm to feel safe, as he was previously shot in the leg when he was 17 or 18. PSR at 6, 14.

After being transported to federal court on a writ, Martinez quickly took responsibility for his offenses in this case and expressed remorse and insight. As Martinez stated, "I know having a gun makes my community less safe and I know that's bad." PSR at 6. Martinez further explained, "I felt like I needed to have a gun because I had been shot. I know I need to have another way to feel safe." *Id*. Thus, Martinez has not only taken responsibility for his offenses, but he also understands that his possession of a firearm undermines public safety and that needs to find alternative means, such as moving to a different location, to feel safe. *Id*.

United States' Sentencing Memorandum  5
3:23-CR-00228-EMC

Further, Martinez has expressed a willingness to participate in counseling, so that he can make better decisions in the future. PSR at 15. Martinez explained that his father (with whom he was close) died when he was 7 and that his mother then had to work a lot to support him and his younger brother. *Id*. at 13-14. Martinez explained that he lacked adult supervision in the home given his mom's work schedule, and that he grew up in a neighborhood where he was exposed to violence and started getting into trouble. *Id*. at 14. Martinez noted that he was only 14 when his friend of the same age was stabbed, and that several of his friends have died through different forms of violence. *Id*.

Martinez now wishes to take care of mother and younger brother, and he knew this was his responsibility as the eldest son after his father died. PSR at 14. Although he has earned a high school diploma, Martinez also intends to learn a trade and become a HVAC technician, so that he can earn enough money to support his mother and younger brother. *Id*. And Martinez has a supportive partner (initials A.S.) who can help him accomplish his goal of becoming a productive member of society. *Id*. at 6, 14. Thus, Martinez has reflected on his upbringing and expressed a sincere desire to change his life for the better.

Furthermore, Martinez has gained insight into his abuse of substances. PSR at 15. From the time that he was 13 until the time of his arrest in 2022, when he 24, Martinez was using marijuana daily. *Id*. Because of the pain he experienced from being shot in 2021, Martinez was also using Percocet daily in the year leading up to his arrest in 2022. *Id*. Martinez appreciates that his drug use may have made him more paranoid and contributed to the commission of the offenses. *Id*. Thus, to the extent Martinez refrains from future drug abuse, he can further mitigate his risk of reoffending.

Accordingly, based on the nature and circumstances of Martinez's offenses, and his specific history and characteristics, a sentence of 18 months is appropriate, where he has been in continuous custody for over 3 years and 5 months.

### 2. Need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

An 18-month sentence also reflects the seriousness of Martinez's offenses, promotes respect for the law, and constitutes just punishment. That is, even though it appears that Martinez merely possessed

(and did not fire shots with) the firearms in this case, an 18-month sentence is appropriate given his serious criminal history.

**3. Need for the sentence to afford adequate deterrence to criminal conduct**

Imposing at 18-month custodial sentence on Martinez also promotes deterrence. As noted, after taking responsibility for his offenses in this case, Martinez appears to understand that his possession of a firearm increases the risk to public safety and that he can longer rely on a firearm to feel safe. PSR at 6.

**4. The need for the sentence imposed to protect the public from further crimes by Martinez**

Moreover, an 18-month custodial sentence followed by 3 years on supervised release also protects the public from further crimes by Martinez. Not only has Martinez been in physical custody for over 3 year and 5 months, but an 18-month sentence will ensure that he is not in the community until at least January 2027. Also, following his release from prison, Martinez will remain in the Court's constructive custody while he serves 3 years on supervised release, during which he should be subject to a search condition to ensure that he does not again take possession of a firearm and ammunition.

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Martinez to 18 months followed by 3 years on supervised release. The government respectfully recommends that the 18-month sentence should run concurrent to the undischarged portion of the 5-year sentence imposed on Martinez by the San Francisco County Superior Court in Case No. CRI-24004329. And the government requests that Martinez be ordered to forfeit all firearms, magazine, and/or ammunition seized in connection with his case.

DATED: October 16, 2025                                  Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


*/s/ Michael G. Lagrama*
MICHAEL G. LAGRAMA
Assistant United States Attorney